UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

| | | |
|---|---|---|
| SPRINT SPECTRUM, LP and LCC | ) | |
| INTERNATIONAL, INC., d/b/a LCC | ) | |
| WIRELESS DESIGN SERVICES, LCC, as | ) | |
| agent for Sprint Spectrum, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 4:05-cv-154- SEB-WGH |
| | ) | |
| CITY OF JEFFERSONVILLE BOARD OF | ) | |
| ZONING APPEALS, HAL KOVERT, | ) | |
| Chairman, MARY PAT BOONE, BOB | ) | |
| ROGGE, BOB GOLDMAN and DOUG | ) | |
| MESSMORE, Members, | ) | |
| Defendants. | ) | |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This is a dispute between the City of Jeffersonville Board of Zoning Appeals

("Board") and Sprint Spectrum, LP ("Sprint"), a wireless carrier seeking permission to

construct a wireless telecommunications tower on property located in Jeffersonville.  In

August of 2005, Sprint applied for a Special Exception to the City's zoning regulations

which, if granted, would allow it to build a telecommunications tower on property zoned

"IS" or Institutional District.  In an effort to limit the unsightly clutter of

telecommunications facilities as well as other tower-based equipment and because the

property chosen for the installation was occupied by a Baptist church, Sprint proposed to

build a "stealth facility," which would hide the tower and related telecommunications

equipment within a large cross, a symbol unoffensive to the church membership and

thought to be less obtrusive to the residents of the neighborhood.  Sprint maintains that it needs the tower because call traffic within a certain sector of Jeffersonville is not adequately served by existing Sprint equipment.  The Board previously denied Sprint's attempt to locate a tower at another location in the same general area, which, had it been granted, would have cured the call handling problem that Sprint claims it is experiencing.

Sprint's "stealth facility" proposal was considered at a public hearing on August 30, 2005, and resulted in a second denial by the Board.  Sprint is appealing that denial here, contending that the Board's decision was not based on substantial evidence and thus does not comply with the terms of the Telecommunications Act of 1996 ("TCA"), 42 U.S.C. § 332(c)(7)(B)(iii).  The parties have filed cross motions for summary judgment, requiring the Court to give to each party the benefit of all reasonable inferences that may be drawn from the record when considering the opposing party's motion.  *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

### *Review of Local Decision under TCA*

The TCA was enacted, in part, to limit local governments from unfairly retarding and restricting the growth of wireless communications through local regulation by prohibiting the construction of "personal wireless service facilities" (i.e. antenna towers) in sufficient numbers and locations to provide the necessary cell coverage for uninterrupted wireless communication services by wireless carriers.  *See Town of*

*Amherst, N.H.  v. Omnipoint Communications Enterprises, Inc.,* 173 F.3d 9, 13 (1st Cir. 1999)(describing the relevant statutory provision within the TCA as "a deliberate compromise between the competing aims - to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers.").  To ensure that local governments do not unreasonably limit the placement of towers, while acknowledging the corresponding need for local authorities to enforce local zoning rules, Congress included in the TCA the requirement that local governments base any denial of a request to place, construct or modify a telecommunications transmission tower on substantial evidence.  *Primeco Personal Communications, Ltd. Partnership, v. City of Mequon*, 352 F.3d 1147, 1148 (7th Cir. 2003).  In addition, the statute directs that any such denial be in writing.  47 U.S.C. § 332(c)(7)(B)(iii).

The Seventh Circuit has addressed this requirement as follows:

The "substantial evidence" standard is conventionally used for judicial review of agencies' decisions, and though it is unusual for a federal court to be reviewing the decision of a nonfederal agency, we are given no reason to suppose that the term "substantial evidence" in the Telecommunications Act bears a different meaning from the usual one. And indeed we have held that it bears the same meaning. *VoiceStream Minneapolis, Inc. v. St. Croix County, supra*, 342 F.3d at 830; *Aegerter v. City of Delafield*, 174 F.3d 886, 889-90 (7th Cir.1999).  So have the other federal courts of appeals that have considered the question.  *See Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1218 (11th Cir.2002), and cases cited there. As there is no practical difference between the substantial-evidence standard and the even more familiar clearly-erroneous standard when the latter standard is used to guide the application of a legal standard to district court factfindings, *School District of Wisconsin Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 674-75 (7th Cir.2002), and cases cited there, the question in this case comes down to whether the Mequon

planning commission was clearly in error to turn down Verizon's application, in light of the evidence that had been placed before the commission.

*PrimeCo,* 352 F.3d at 1148-49 (7th Cir. 2003).

So, too, in the case at bar: the question is whether the Board clearly erred in denying Sprint's application for a zoning exception. The substantial evidence test is highly deferential to the local authorities, imposing on the party seeking to overturn the decision the burden of proving that the decision was not supported by substantial evidence. *Voicestream Minneapolis, Inc. v. St. Croix County,* 342 F.3d 818, 830 (7th Cir. 2003). The carrier must show not only that its application was denied "but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Id*. at 834. (quoting *Second Generation Properties, L.P. v. Town of Pelham,* 313 F.3d 620, 629 (1st Cir. 2002)). It must establish that, after a thorough investigation of other possibilities, the particular site at issue is without any reasonable alternative. *Id*. at 835.

Upon denying Sprint's special exception application, the Board issued its "findings of fact" in the form of a two-page, pre-prepared document, apparently used by the Board for all special exception requests, containing predetermined questions followed by response choices to be checked off or circled, as appropriate. The four members of the Board participating in the August 30, 2005, meeting, after the evidence was presented regarding the application, unanimously rejected Sprint's request by recording in the negative its responses to each of the following propositions:

1.  The special exception will not be injurious to the public health, safety, moral, and general welfare of the community;

2.  The requirements and development standards for the requested use prescribed by this Ordinance will be met;

3.  Granting the special exception will not subvert the general purpose of the Zoning Ordinance and will not permanently injure other property and uses in the same district;

4.  The proposed use will be consistent with the character of the district therein, the spirit and intent of the Zoning Ordinance, and the Jeffersonville Comprehensive Plan.

The Board's unanimous negative vote as recorded for each of these propositions constituted its written findings of fact in their entirety.

The four propositions listed on the form issued by the Board are also contained in Article 12.3 of the Jeffersonville Zoning Ordinance, which requires the Board, after a hearing, to find that each of those propositions has been satisfied before it can grant a special exception.  Though the Board is obligated to comply with the TCA in rendering its decision on any request to place or construct a wireless telecommunications "facility," local zoning requirements also apply.  "Nothing in the Telecommunications Act forbids local authorities from applying general and nondiscriminatory standards derived from zoning codes, and we note that aesthetic harmony is a prominent goal underlying almost every such code."  *Aegerter v. City of Delafield, Wisc.*, 174 F.3d 886, 891 (7th Cir. 1999).

*Analysis*

Sprint contends that the checklist filled out by the Board does not constitute a written decision, as required by the TCA.  Its second contention is that there is no evidence, or at least insufficient evidence, to support any of the findings made by the Board.  The Board responds, maintaining that no detailed written rationale is required and that implicit in each of the four findings is a determination that Sprint provided insufficient evidence to support the required findings under the ordinance.  The Board also argues that Sprint failed to make the required showing that other property in the area would not be permanently injured by the addition of the cell phone tower or that property values would not be reduced as a result of the issuance of the zoning exception and placement of the stealth antenna on the church property.

Our analysis causes us to conclude that neither party has fully met its obligations here, and that, indeed, the record is far too meager to support a judicial determination for either side.  The written record from the hearing is, at best, minimal, consisting only of the application and certain related filings, Sprint service area maps, a photo re-creation and a real estate study from an unrelated location.  This evidence has been supplemented by the 30-page, double-spaced transcript of the hearing.

Though the only documentation included in the Board's record was submitted by Sprint, who was, of course, the local telecommunications applicant, we assume that that

was because the applicant has both the incentive and capacity to compile a written submission which it has developed over time, while the local community of neighbors and other interested parties must react quickly after receiving their first notice of the hearing in advancing their concerns. Further, the transcript from the hearing reveals that Sprint, through its agent and representatives, provided virtually no explanation of the written documentation that it introduced.

For example, there is a study of property values for an altogether unrelated community, Lake Oswego, which appears to indicate that the value of property did not go down in that location when a telecommunications tower was installed. It was not explained, either to the Board or the Court, specifically how that study applies to Jeffersonville. Consequently, the value of the study submitted by Sprint is quite limited; indeed, in all likelihood it carries less weight than an opinion expressed during the hearing by a local resident as to his expectation that his property value would diminish as a result of the placement of the tower, even if the tower were disguised within a cross. Similarly, the testimony of the Sprint engineer, in which he stated that "we have customer complaints in the area quite a bit" from people trying to use their cell phones within their homes, is no less anecdotal than the testimony from two local Sprint service users who stated that they never have any trouble using their cell phones in the area. These

assertions clearly do not establish that Sprint had no other options for placement of the tower.[1]

We are not persuaded by Sprint's contention that the form used by the Board in denying the exception, thus prohibiting the placement or construction of a wireless facility, was insufficient, as a matter of law or fact, to constitute a written decision that complies with 47 U.S.C. § 332(c)(7)(B)(iii).  The TCA does not include a definition of "in writing," but, giving the words their ordinary and plain meaning, the form clearly is a writing and it does convey both the final decision and the individual, subsidiary findings upon which the Board based its denial.  *Cler v. Illinois Educ. Ass'n.,* 423 F.3d 726, 731 (7th Cir. 2005)(Cardinal rule is that words in statutes should be given their ordinary and plain meaning).  Whether the decision conveyed by the Board was supported by substantial evidence contained in a written record is an additional but separate statutory requirement from whether the decision was reduced to writing.  In short, even though we hold that the Board's form suffices as a written decision, if its conclusions lack substantial evidentiary support, the Board is not in full compliance with the requirements of the TCA.  It is here that we conclude the Board has fallen short.

The Board attempts to rely on implications from its findings in maintaining that

---

[1]One option not addressed at all was Sprint's possible placement of its antenna at the same location used  by Nextel, another telecommunications company with which Sprint recently merged.  The Sprint engineer testified that the two companies utilize different frequencies and, therefore, could not use the same antenna, but he did not address whether the location of the Nextel antenna foreclosed placement of  the Sprint antenna at that same location.

insufficient evidence marred Sprint's effort to support its entitlement to an exception. Though, we repeat, a detailed rationale is not required in terms of the written decision by local zoning authorities, there must be some explanation of the Board's reasoning based on the evidence submitted.  Here, the bare-bones form that was filled out by checkmarks entered by the Board provides so little insight into the basis for the Board's final decision that no one reviewing it, including the Court, is able to glean an understanding of the Board's reasoning in response to the evidence submitted.  References to generalized aesthetic concerns are insufficient to support a denial of a permit under the TCA. *Primeco Personal Communications, Limited Partnership, v. City of Mequon*, 352 F.3d 1147, 1150 (7th Cir. 2003).  And, if there were any other potential nearby sites that might be preferable for Sprint to pursue, the Board certainly mentioned none.  In fact, though Sprint has failed to establish that its pursuit of alternative sites would be fruitless, the Board's previous denial of an earlier application, along with its lack of explication in the form ruling issued by the Board in denying this request, would reasonably suggest that the likelihood of Sprint's finding a successful alternative to its legitimate reception problem is virtually futile.

In the final analysis, Sprint must provide a more convincing record to support its need for the exception it has requested, including a more convincing case that it lacks reasonable alternatives to correct the transmission and coverage problems.  As for the

Board, it, too, must lay out its findings and conclusions in a way that explains the insufficiencies it has found in the application before it.

Accordingly, we **DENY** both cross motions for summary judgment (Doc. #24 & #29) and **REMAND** this matter to the City of Jeffersonville, Board of Zoning Appeals, for further proceedings consistent herewith.

IT IS SO ORDERED.

Date: 03/27/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mark Wesle
TILFORD DOBBINS ALEXANDER BUCKAWAY & BLACK LLP
mdobbins@tilfordlaw.com

Sandra Finley Keene
TILFORD DOBBINS ALEXANDER BUCKAWAY & BLACK LLP
skeene@tilfordlaw.com

Leslie D. Merkley
MERKLEY LAW OFFICE
lmerkley@sbcglobal.net